## Knepley's Appeal.

A testator devised to his wife his dwelling-house and furniture, and directed the sum of $3000 to be left or put at interest by his executor, and the interest thereof to be paid to his widow annually *during her widowhood:* and as to the said three thousand dollars he further directed, that at the *marriage or decease* of his widow, the same be put to interest by his executor for his son *John* during his lifetime, and at his decease the principal to be paid to his sons Charles and Henry; and if one of them should die before his father, the survivor to take the whole. The widow refused to take under the will. *Held*, that as the said sum of three thousand dollars was to be invested for the use of John only on the marriage or decease of the widow, that John was not entitled to have that amount invested for his use on the refusal of the widow to take under the will; but it was directed that the balance in the hands of the administrator, which was less than $3000, be invested, and allowed to accumulate until the marriage or decease of the widow, when the sum of $3000 may be required to be invested for the benefit of John if living, and if not, then to be paid to his sons as directed by the will.

THIS was an appeal by John Knepley, a legatee under the will of John Knepley, deceased, from the decree of the Orphans' Court of Dauphin county, confirming the report of the auditor appointed to distribute the balance in the hands of the administrator with the will annexed.

In the will of John Knepley, it was, *inter alia*, provided: " I give and devise the house and lot of ground on Second street, in Harrisburg, wherein I now live, with all the furniture on the premises, at my decease, to my widow, to hold during her widowhood; and I value the same at the sum of three thousand five hundred dollars. And I direct the sum of three thousand dollars in money to be left at interest, or put to interest by my executor, and the interest thereof to be paid to my widow annually during her widowhood. And I direct that no inventory or account of the furniture aforesaid be taken, nor shall my widow be required to give security therefor.

" Item: I give and devise to my son John Knepley, and to his heirs and assigns, my house and lot of ground on Second street, in Harrisburg, adjoining the lot of Thomas Reed and others; and I value the same to him at two thousand dollars. I also give and

bequeath to my son John one thousand dollars, absolutely. And I also direct that he shall have the use of three thousand five hundred dollars more, in the following manner :—His note to me, with interest to be deducted, and the balance I direct to be put to interest on real estate during his lifetime, the interest to be paid to him, and at his decease, the principal to be paid to his two sons, Charles and Henry.

"Item: At the marriage or decease of my widow, I give and devise the house and lot where I now dwell, with the furniture that shall remain, to my son David, during his life, and at his decease to his lawful issue, if he leave any, in fee; if he shall leave no such issue, then to my nearest blood relations, and their heirs and assigns: and as to the three thousand dollars put to interest for the use of my widow as aforesaid, I direct the same to be put to interest by my executor for my son John, during his lifetime, and at his decease the principal to be paid to his said sons, Charles and Henry Knepley : and if one of his said sons shall die before his father, the survivor shall take the whole.

"Item: The house and lot of ground at Halifax, I give and devise to my son John and his heirs, upon the marriage or decease of my said daughter. And the one thousand dollars at interest for her use, I order and direct at her marriage or decease to be put to interest by my executor for my son David, and the interest to be paid to him during his lifetime; and at his decease, the principal to be paid to his lawful issue, if he leave any, and if not, then to my nearest blood relations.

"Item: the rest and residue of my personal estate, I order to be put to interest by my executor, for five years after my decease, and then one-half to be paid to my son John; and in case David, my son, be then of sound mind, the other half be paid to him; but if he be not of sound mind, his share to be paid to my nearest blood relations."

The will was proved 11th April, 1849.

The refusal of the widow to take under the will was filed on 23d April, 1849. On 8th July, 1850, the administrator with the will annexed filed his account, showing a balance in his hands of $22,929.21. An auditor was appointed to make distribution of the balance. The part of his report to which exception was taken was, *inter alia*, as follows:—

"It remains to consider what disposition is to be made of the $3000 directed to be put to interest for the benefit of testator's widow during her widowhood, she having refused to take anything under the will. In relation to the real estate devised to her during her widowhood, it is provided thus :—'Item : At the marriage or decease of my widow, I give and devise the house and lot to my son David during life,' &c.; and then follows this direction:

[Knepley's Appeal.]

—'And as to the $3000 put to interest for my widow as afore-said, I direct the same to be put at interest by my executor for my son John, during his life,' &c., with remainder over. It is contended for John that the use of the $3000 vested in him at the election of the widow not to take under the will, the same as if she had married or died—the intention of the testator being that it should go to John as soon as the estate of the mother therein terminated. If the circumstance of the mother's refusing to take under the will, had rendered the happening of the contingencies upon which John's title was to accrue anything the less probable, such a construction might be favored. For the words 'at the marriage or decease of my widow,' at the commencement of the clause in relation to the real estate, are to be referred also to the $3000, although they are not expressly repeated. And inasmuch as the election of the widow has evidently reduced the amount which will be coming to the residuary legatees, and thereby interfered with the calculations of the testator in that behalf, without affecting the specific sums bequeathed to John and others, the auditor thinks that John should wait until the literal happening of the contingency upon which he was to take—the interest of the $3000, in the mean time, to be applied under the residuary clause, to restore in some measure that equilibrium amongst the objects of the testator's bounty, which the widow's election unexpectedly to him has disturbed. The auditor thinks that the widow's election not to take under the will, being a contingency not contemplated by the testator, is not specifically provided for, and that the fund remains undisposed of until one or the other of the contingencies named shall happen, except under the residuary clause, which requires it to be put at interest for five years before distribution."

The auditor, after allowing the widow one-third of the money in the hands of the administrator with the will annexed, applies the balance to the payment of all the legacies with interest, except the said legacy of $3000.

"The balance of the fund in the hands of the administrator, according to the view taken of this case by the auditor, must, under the residuary clause of the will, be invested and allowed to accumulate for a period of five years from the death of the testator, unless the marriage or death of the testator's widow, before that time, shall entitle John Knepley to the use of $3000 thereof, with remainder over to his children, as provided in that event. However, the auditor does not intend to decide questions which have not yet arisen. He therefore merely directs the administrator to invest this balance, allowing the interest to accumulate, until subsequent events determine what further disposition is to be made of it. The balance to be thus invested is the sum of $2706.31."

Exceptions were filed as follows:—

1. The auditor erred in deciding that John Knepley, the legatee, is not entitled to the interest of three thousand dollars, or any part thereof, until the marriage or death of the widow of the testator.

2. The auditor erred in not directing the said $3000, or, in the case of a deficiency, a proportion thereof, to be put at interest (since the widow's refusal to take under the will), for the said John Knepley, the legatee, during his life, according to the provisions of the will, as in case of the widow's marriage or death, and in throwing the whole loss on this legacy when the others ought to abate.

PEARSON, J., overruled the exceptions.

An appeal was taken by John Knepley, a son of deceased, and exception was filed, that the Court erred in overruling the exceptions filed for John Knepley to the auditor's report, and in refusing to order said legacy to be put at interest for John Knepley, during life.

The case was argued by *Herman Alricks* for the appellant.— He contended that although the widow is neither dead nor married, yet it is obvious from the whole will that it was the intention of the testator that the interest of the $3000 should go to John whenever the widow ceased to have a claim to it.

The testator intended, as far as practicable, to make the shares of his sons equal.

No authority has been found as to the legal effect of the refusal of a widow to take under a will, upon the shares of the other legatees and devisees; but it is believed that where (as in this case) the other legacies and devises are not materially affected by the widow's refusal, that the provisions of the will in regard to all others should be carried out according to the plain directions contained in the will. The widow's refusal, where it does not directly, ought not to be construed indirectly to disturb other provisions. In this distribution, the legacies have all been paid in full and with interest, except this one of $3000, and interest enough had accrued on it at the time of the Court's decree to have made it whole: King *v.* King, 1 *W.* & *Ser.* 205.

The Court below fell into error, in fact, in regard to the residuum. The one-half does not, in any event, go to the daughter. *John has been the principal loser by the widow's refusal. She swept away the whole residuum, to three-fourths of which John would be entitled, in case David remains of unsound mind.*

This will ought to be put into effect as in case of a will where there is a posthumous child unprovided for. Every legacy and provision is to stand, where it does not infringe upon the rights of others. So the bequest of this interest to John, whenever the widow became, from any cause, unable to claim it, is confidently believed to fall within the intention of the testator.

[Knepley's Appeal.]

The opinion of the Court, filed August 2, was delivered by

CHAMBERS, J.—The intention of the testator as to the administration of his estate under his will, has been defeated by the election of his widow, to take her rights at law and not under the will. By doing so she receives a much larger amount than what was devised her, and withdraws funds that were intended by the testator for his children. By the will of John Knepley, three thousand dollars were to be put to interest by his executor, and the interest paid annually to his widow during her widowhood; and it was after provided, that at the marriage or death of his widow, the same three thousand dollars were to be put to interest by his executor for his son John during his lifetime, and at his decease the principal to be paid to his sons Charles and Henry Knepley, and if one of his sons should die before his father, the survivor to take the whole. The residue of the personal estate, after the payment of the legacies specified, was to be put to interest for five years, and then paid to John and David as provided.

The testator no doubt supposed that there would be a considerable residue, to be disposed of by the clause recited, and there would have been, had not the widow claimed in opposition to the will. The balance of the personal estate remaining after the appropriation to legacies then payable, was $2706.31, which John claims to be invested immediately for his use, inasmuch as the widow declined to receive the same to be invested for her use. By the terms of the will, this sum of $3000, to be put to interest first for the widow, was only to be invested for the use of John in the manner provided on the death or marriage of the widow; and though the widow has refused to take it, and by her claim has disturbed the distribution and displaced the funds from the administration intended by the will, yet it is not for the law to supply this by a disposition not expressed in the will, so as to give John the benefit of an investment of the balance remaining, at a time before the contingencies named, viz. the death or marriage of the widow. To conform to the will as far as practicable, it will be sufficient to provide for the investment for John when the contingencies may occur that authorize it; and that in the mean time it is proper, and the duty of the administrator, to invest the balance in his hands at interest, and allow it to accumulate until the marriage or decease of the widow, when of the same, $3000 may be required to be invested for the benefit of John if living, and if not, to be paid to his sons Charles and Henry in the manner directed by the will.

There being no error in the report of the auditor or decree of the Court against the claim of John Knepley to an immediate investment of the balance in the hands of the administrator, the same are confirmed.